UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

The Estate of ZELJKO DOJCINOVIC,
deceased, by its Personal Representative
DANES DOJCINOVIC, and The Estate,
ASIMA DOJCINOVIC, deceased,
by its Personal Representative
DANES DOJCINOVIC,

            Plaintiffs,

v.                                                                                    Case No. 20-12134

CITIZENS INSURANCE COMPANY OF
THE MIDWEST, et al.,

            Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT ACE'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT GREAT AMERICAN'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT CITIZEN'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Decedents,[1] Michigan residents, were both killed when the tractor-trailer they were operating was involved in a crash on I-94 in Illinois. Plaintiffs brought this action against three different auto insurers seeking Personal Injury Protection ("PIP") benefits under Michigan's No-Fault Act. All three insurers have moved separately for summary judgment arguing, for various reasons, that they are not responsible for providing PIP benefits. After reviewing these three motions, the court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, the court will grant Defendant ACE's motion for summary judgment (ECF No. 41) and Defendant

---

[1] Throughout this opinion court uses "Plaintiffs" to refer to the two Decedents, Zeljko Dojcinovic and Asima Dojcinovic, whose estates are being personally represented by Danes Dojcinovic in the present action.

Great American's motion for summary judgment (ECF No. 28). However, the court will deny the motion for summary judgment (ECF No. 39) by Defendant Citizens—the insurer who provided coverage on the Plaintiffs' personal vehicles registered in Michigan.

## I. BACKGROUND

### A. Factual Background

Plaintiff Decedents Zeljko Dojcinovic and Asima Dojcinovic were married and both self-employed commercial truck drivers who "owned"[2] a 2006 Freightliner tractor. (ECF No. 39, PageID.441.) Starting in September 2018, a corporation called Dark & Z, Co, presumably controlled by one or more of the Plaintiffs, leased the Freightliner to Elvis Services, Inc. ("Elvis") through an "Independent Contractor Operating Agreement." (ECF No. 41, PageID.697; ECF No. 41-3, PageID.781; ECF No. 41-4, PageID.801.) Elvis is a federally registered motor carrier based in Fort Wayne, Indiana. Such an arrangement is evidently common in the trucking industry.[3] As part of the agreement,

---

[2] The record, as presented to the court, is not clear on whether the Freightliner was registered and titled to one of the Decedent Plaintiffs personally or if ownership of the tractor was transferred to "Dark & Z, Co." a Michigan corporation that at least one of the Plaintiff Descendants controlled. The court notes that Dark & Z, Co. is named as the lessor on the independent contractor operating agreement with motor carrier Elvis and Dark & Z is listed the named insured on the bobtail insurance policy purchased from Defendant Great American. (ECF No. 41-3, PageID.781; ECF No. 28-4, PageID.263.) The parties' collective briefing also does not directly address this factual distinction.

[3] "Federal regulations governing motor carriers require carriers to either own their trucking equipment or to enter into written leases in which the 'owner' of the equipment 'grants the use of equipment, with or without driver, for a specified period . . . for use in the regulated transportation of property, in exchange for compensation." *Clarendon Nat. Ins. Co. v. Medina*, 645 F.3d 928, 931 (7th Cir. 2011) (citations omitted); *see also* 49 C.F.R. § 376.12 (lease requirements).

Dark & Z also agreed to "provide competent drivers" to haul Elvis's cargo. (ECF No. 41-3, PageID.782.)

Under the agreement, Dark & Z would be compensated at a set rate for milage and reimbursed for certain other expenses incurred while operating. (*Id.*, PageID.788.) An addendum to the agreement also provided that the "Carrier shall provide public liability insurance and property damage insurance for the [tractor] at all times while the [tractor] is being operated on behalf of the Carrier," and Dark & Z, as an independent contractor, "shall procure, carry and maintain public liability and property damage insurance which shall provide coverage to the Independent Contractor whenever the [tractor] is not being operated on behalf of the carrier." (*Id.*, PageID.791.)

On August 3, 2019, Zeljko was driving, and Asima was a passenger in the Freightliner, which was under the dispatch of Elvis, and transporting a load of dunnage from Ford Motor Company's Chicago Assembly plant to YAPP, an auto supplier located in Gallatin, Tennessee. (ECF No. 28, PageID.214; ECF No. 28-1, PageID.226.) Only a short distance from the Ford plant, Plaintiffs were killed in a crash on I-94 in Calumet City, Illinois. The circumstances of the accident are not relevant to the court's analysis.

In June 2020, Plaintiffs' estates commenced the present litigation in Wayne County Circuit Court by bringing a single breach of contract claim against the three Defendant insurers. (ECF No. 1-1, PageID.15-17.) The complaint, which was subsequently removed to federal court, alleges that the Defendants had a "contractual and/or statutory duty" to provide Plaintiffs with no-fault PIP benefits under Michigan's

No-Fault Act.[4] (*Id.*) It indicates that Plaintiffs had applied for and been denied no-fault benefits by all Defendants. (*Id.*)

Each Defendant here issued an automotive insurance policy that, they admit, was in effect at the time of the 2019 crash, but each argues that it is not responsible for paying PIP benefits in the present scenario for a different reason.

### B. ACE Liability Policy

Defendant ACE issued a motor carrier insurance policy to Elvis that it concedes provided coverage on the Freightliner at the time of the accident. (ECF No. 41, PageID.697-98; ECF No. 41-2, PageID.722-78.) But ACE contends the policy provided liability coverage—$ 1 million—to the tractor alone. (ECF No. 41, PageID.698.) The policy identified Elvis as a motor carrier located in Fort Wayne, Indiana, and the policy includes several Indiana-specific endorsements. (ECF No. 41-2, PageID.760-74.) Instead of listing the different vehicles covered by ACE, the policy includes a "composite rate endorsement" that calculates the "final premium" owed by Elvis based on the "the average number of autos" that Elvis "own[ed] including autos you lease or borrow for a period of 6 months." (*Id.*, PageID.734.) (Plainly, such an endorsement allows adding and dropping leased tractors from coverage without making formal changes to its insurance.) The policy's fee schedule includes a spot for marking the coverage selection. The part of the schedule where a premium would be listed for any personal injury protection coverage is left blank:

---

[4] In addition to reimbursing for medical expenses, Michigan personal injury protection benefits provide survivors' loss benefits and limited reimbursement for funeral expenses resulting from an auto accident. *See* Mich. Comp. Laws § 500.3108; § 500.3107(1)(a).

**SCHEDULE A**

| Extra Heavy Truck Tractors | | Estimated Number | 22 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Liability | Rate Per "Auto" $4,104.00 | Personal Injury Protection | Rate Per "Auto" | Physical Damage: Comprehensive | Rate Per "Auto" | Physical Damage: Collision | Rate Per "Auto" | |
| UM/UIM | Rate Per "Auto" $59.00 | Medical Payments | Rate Per "Auto" | Physical Damage-Specified Perils | | | | |

| Truck (Zone Rated) | | Estimated Number | 16 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Liability | Rate Per "Auto" $7,134.00 | Personal Injury Protection | Rate Per "Auto" | Physical Damage: Comprehensive | Rate Per "Auto" | Physical Damage: Collision | Rate Per "Auto" | |
| UM/UIM | Rate Per "Auto" $59.00 | Medical Payments | Rate Per "Auto" | Physical Damage-Specified Perils | | | | |

(*Id.*, PageID.735.)

Because the relevant portion of the schedule is unmarked, Defendant ACE argues it cannot be responsible for providing PIP benefits not bargained for under the terms of the insurance policy it issued. Alternatively, Defendant argues that because "Zeljko and Asima Dojcinovic were independent contractors," even if ACE's policy included PIP benefits, it would not be first in the "order of priority" to provide such benefits. (*Id.*, PageID.703-04.)

### C. Great American "Bobtail" Policy

Defendant Great American issued a "bobtail liability or non-trucking Insurance"[5] policy to Dark & Z Corp insuring the Freightliner from May 2019 to May 2020. (ECF No. 28, PageID.212; ECF No. 28-4, PageID.263.) It is undisputed that this policy, issued in Michigan, provided "Michigan Personal Injury Protection." (*Id.*) But the endorsement providing PIP coverage contains an "exclusion" stating that Great American "will not pay

---

[5] "Generally, a 'bobtail' policy is a policy that insures the tractor and driver of a rig when it is operated without cargo or a trailer." *Besic v. Citizens Ins. Co. of the Midwest*, 290 Mich.App. 19, 800 N.W.2d 93, 95 n.1 (2010) (quoting *Integral Ins. Co. v. Maersk Container Serv. Co., Inc.*, 206 Mich.App. 325, 520 N.W.2d 656 (1994))

5

Personal Injury Protection benefits for bodily injury" while the Freightliner is "transporting cargo on behalf of any lessee." (*Id.*, PageID.295.)

Because it is undisputed that Plaintiffs were hauling a load under dispatch for lessee Elvis at the time of the crash, Defendant Great American seeks summary judgment by arguing that the "unambiguous language of the [bobtail] Policy excludes personal injury protection coverage" sought by Plaintiffs. (ECF No. 28, PageID.215.)

### D. Citizens Personal Vehicle Policy

Defendant Citizens issued a Michigan no-fault automotive policy that listed Plaintiffs Zeljko and Asima Dojcinovic as the named insured for four different passenger vehicles registered at their home in Washington Township, Michigan. (ECF No. 39-1, PageID.453.) The policy was in effect at the time of the fatal crash and provided Plaintiffs with full liability coverage including PIP benefits. (*Id.*)

Defendant Citizens argues in its motion for summary judgment that it is not liable for personal injury protection benefits because case law suggests that "Citizens is not in the highest level of priority of payment of benefits pursuant to Michigan's No-Fault Act." (ECF No. 39, PageID.44-45.)

### E. Plaintiff's Response

Plaintiffs provide one short response brief addressing all three motions for summary judgment. The brief argues that Plaintiff Descendants, as Michigan residents, must be covered by all three insurance policies at the time of the accident, "the only remaining question is what entity should pay for [PIP] benefits." (ECF No. 36, PageID.355.) The Plaintiffs "leave it to the sound discretion of the court to determine which entity is responsible for payment." (*Id.*) And Plaintiffs point to six Michigan Court

6

of Appeals decisions "with applicable fact patterns" and note that "not a single [ruling] reached the conclusion that an individual in these circumstances is not afforded any insurance coverage." (*Id.*, PageID.361.)

## II. STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party

opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III. DISCUSSION

Given the lack of factual disagreement between the parties, the three motions for summary judgment are *de facto* requests for the court to determine which insurer, if any, is responsible for providing PIP benefits to Plaintiff Decedents. Adjudicating these motions will require the court to make two main determinations. The court must first determine which of the three insurance policies, based on their terms, provided PIP coverage at the time of the accident. If more than one Defendant insurer issued policies that provide PIP benefits, the court must next determine which insurer has priority under Mich. Comp. Laws § 500.3114 which controls "priority among insurers for payment of benefits" under the No-Fault Act.

To determine if any of the policies provided active PIP coverage at the time of the 2019 Illinois crash, the court looks to the plain language of each policy. In Michigan, "an insurance contract must be enforced in accordance with its terms." *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 596 N.W.2d 190, 193 (1999). "Terms in an insurance policy must be given their plain meaning and the court cannot create an ambiguity where none exists." *Heniser v. Frankenmuth Mut. Ins. Co.*, 449 Mich. 155, 534 N.W.2d 502, 505 (1995) (internal quotation marks omitted). The plain and ordinary meaning of undefined contract terms "may be determined by consulting dictionaries." *McGrath v. Allstate Ins. Co.*, 290 Mich. App. 434, 439, 802 N.W.2d 619, 622 (2010) (citations omitted). The court considers the language of each of the policies in turn.

### A. ACE Policy

Defendant ACE does not dispute that it provided liability coverage at the time of the crash. Rather, it argues that the policy's terms did not contemplate providing PIP coverage on the truck while it operated in states where such coverage was not required. (*See* ECF No. 41.) The court agrees. The court's review of the policy shows no indication that PIP coverage was ever purchased for any leased vehicles insured by Elvis. (*See* ECF No. 41-2.) Elvis purchased a policy operating under the assumption—albeit incorrect—that all the trucks it owned or leased would be licensed in Indiana; the policy includes only Indiana-specific endorsements. The court's review of the policy finds no language expressly providing for PIP benefits. The schedule of fees in the policy clearly indicates there was an opportunity for Elvis to opt for the inclusion of "Personal Injury Protection" benefits, yet this schedule shows that Elvis did not purchase such coverage and instead chose only to purchase liability coverage and underinsured/uninsured motorist coverage. (ECF No. 41-2, PageID.735.)

The policy's "out of state extension" provision also does not provide PIP benefits here because the crash occurred in Illinois. The extension states that "[w]hile a covered 'auto' is away from the state where it is licensed, we will . . . [p]rovide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered 'auto' is being used." (ECF No. 41-2, PageID.739.) Defendant ACE is correct that the plain language of this provision demonstrates that the crash at issue would not fall under the provision because Illinois does not require no-fault benefits. *See* 625 Ill. Comp. Stat. 5/7-601, *et seq.* The Michigan Court of Appeals also reached the same conclusion in an analogous factual

9

scenario. *See Besic v. Citizens Ins. Co. of the Midwest*, 290 Mich. App. 19, 28-29, 800 N.W.2d 93, 98 (2010) ("The [policy's out of state coverage extension] does not apply in this case because at the time of the accident [plaintiff] undisputedly was using the covered "auto" in Ohio, a state that does not have a no-fault liability scheme.").

In sum, since Elvis, an out-of-state company contracting with an out-of-state insurer, chose to purchase a policy without PIP coverage, Plaintiffs cannot claim such benefits from Defendant ACE. Indeed, some of the cases cited by Plaintiffs—in support of their argument that one of the insurers must provide PIP coverage in the present instance—illustrate that Plaintiffs are not entitled to coverage under a lessee's auto policy when its written terms do not provide for such coverage. *See Besic*, 290 Mich. App. at 28-29, 800 N.W.2d at 99 (finding that a liability insurer who sold a policy to an out-of-state motor-carrier-lessee had no "statutory obligation to incorporate no-fault PIP coverage into the policy it sold to [lessee]" because defendant insurer "sold the policy at issue to [lessee] in Illinois, and not to [plaintiff] in Michigan"); *Youhanna v. Auto Club Ins. Ass'n*, No. 342436, 2019 WL 1924717, at *5 (Mich. Ct. App. Apr. 30, 2019) (holding that a defendant insurer was not responsible for providing an injured driver with PIP benefits because the motor-carrier-lessee, who took out the policy, had failed to properly notify the defendant that the newly leased fifth truck had been added to its fleet).

Furthermore, whether the independent contractor agreement between Dark & Z, Co and Elvis required Elvis to purchase PIP coverage is irrelevant to Defendant ACE's motion for summary judgment. All that matters is whether ACE contracted to provide Michigan PIP coverage, and the uncontested facts, and the language of the policy,

10

indicate that it did not.[6] Therefore, the court finds that Defendant ACE is entitled to summary judgment.

### B. Great American "Bobtail" Policy

Defendant Great American moves for summary judgment arguing that the PIP endorsement included in the *non-trucking* (bobtail) policy it issued to the truck's owner, Dark & Z, Corp., contains an explicit exclusion that bars Plaintiffs from seeking PIP benefits here because they were hauling a load at the time of the crash. (ECF No. 28, PageID.215-17.) After examining the policy language at issue, the court agrees that the plain language of this exclusion applies to the factual scenario at issue.

The Great American policy provides PIP benefits through a "Michigan Personal Injury Protection" endorsement. The PIP endorsement contains a list of exclusions, which unequivocally states "[w]e will not pay Personal Injury Protection benefits for bodily injury . . . [t]o anyone arising out of the ownership, operation, maintenance, or use of a covered auto while being used in the business of *any lessee* or while being *used to transport cargo* of any type." (ECF No. 28-4, PageID.295 (emphasis added).) The language of such an exclusion is unsurprising because the purpose of a *non-trucking* bobtail policy is to provide gap-filling coverage when the truck is not being utilized by a federally registered motor carrier that must carry its own insurance.

---

[6] The ACE policy, issued to Elvis in Indiana, may require the application of Indiana law when interpreting its provisions. But since Indiana, like Michigan, considers insurance polices to be contracts "governed by the same rules of construction as other contracts," the choice of law does not change the outcome here. *Just. v. Am. Fam. Mut. Ins. Co.*, 4 N.E.3d 1171, 1175 (Ind. 2014) (quotation omitted); *see also Erie Indem. Co. v. Est. of Harris*, 99 N.E.3d 625, 630 (Ind. 2018) ("When confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning.").

Plaintiffs do not attempt to provide an alternative reading of this provision, and again, rely on the fact that Michigan courts have sometimes found that a bobtail policy still provided PIP coverage when the vehicle was hauling a load. The *Besic* case, cited by Plaintiffs, is illustrative of why reliance on such analogies is insufficient. In *Besic*, the plaintiff, an owner-operator, leased his truck to an out-of-state motor carrier that, the court found, did not purchase a policy providing PIP benefits. 290 Mich. App. at 22, 800 N.W.2d at 94. Nevertheless, the court held that the plaintiff could claim PIP benefits for injuries sustained while hauling a load in Ohio under a bobtail policy that the plaintiff had purchased himself. 290 Mich. App. at 26, 800 N.W.2d at 97. This holding, however, was explicitly predicated on the specific language of the Michigan PIP endorsement attached to the bobtail policy. *Id.* The court found that the endorsement at issue in *Besic* did not feature an exclusion limiting the endorsement's coverage when the vehicle was leased. *Id.* Unlike *Besic,* the policy issued by Defendant Great American contains an explicit exclusion in the PIP endorsement, consequently *Besic's* holding counsels against finding that Plaintiffs should be provided coverage under the bobtail policy here where the wording of the exclusion leads inexorably to only one reading. Since it is undisputed that the insured truck was hauling a load for a lessee at the time of the accident, the plain language of this exclusion must control. Consequently, no PIP coverage is available to the Plaintiffs under the Great American policy.[7]

---

[7] Whether this exclusion could be voided on public policy grounds is a separate issue that has not been expressly raised by Plaintiffs or the other Co-Defendants. *See* Mich. Comp. Laws § 500.3101; *Cohen v. Auto Club Ins. Ass'n*, 463 Mich. 525, 531, 620 N.W.2d 840, 843 (2001) ("[A] policy exclusion that conflicts with the mandatory coverage requirements of the no-fault act is void as contrary to public policy.")

**C. Citizens Policy**

Defendant Citizens, who insured Plaintiffs' personal vehicles at the time of the crash, argues that it also cannot be held responsible for providing PIP benefits. (*See* ECF No. 39.) The main thrust of Citizen's argument is that both ACE and Great American, as insurers of the Freightliner, are higher in the "order of priority" that Michigan uses to determine which insurer must pay benefits when more than one policy provides PIP coverage. *See* Mich. Comp. Laws § 500.3114(3) ("An employee, . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.") As Citizens points out, there are a significant number of court decisions addressing whether a self-employed truck driver is considered an *employee* or *independent contractor* for the purposes of Michigan's no-fault regime. *See Horace Mann Ins. Co. v. Acuity,* 447 F. Supp. 3d 594, 598 (E.D. Mich. 2020) (Friedman, J.) (summarizing Michigan case law and finding that a self-employed truck driver, who leased his rig to a motor carrier through an independent contractor agreement, is nevertheless considered "an employee within the meaning of Mich. Comp. Laws § 500.3114(3)" that "shall receive

---

(quotation omitted). While Plaintiffs' brief contains some language that might be construed as suggesting contract reformation, the court will not guess. It is Plaintiffs' responsibly to explicitly raise and develop such an argument if it seeks the drastic result of rewriting the plain language of an insurance policy action. The court will not further consider the issue of reformation because the Plaintiffs did not adequately raise or develop this novel question. *See Smith v. Perkins Bd. of Educ.,* 708 F.3d 821, 830 (6th Cir. 2013) (finding a district court had abused its discretion when it "entered [summary judgment] against [the plaintiff] on grounds that had not been raised by either party").

13

PIP benefits to which he is entitled from the insurer of the furnished vehicle.")(quotation omitted); *Miclea v. Cherokee Ins. Co.*, 333 Mich. App. 661, 669, 963 N.W.2d 665, 670 (2020), *appeal denied*, 959 N.W.2d 537 (Mich. 2021) (same).

But without PIP coverage from another insurer, Citizen's place in the order of priority is irrelevant. Since neither the ACE nor Great American policies on the Freightliner provided coverage to the Plaintiffs at the time of the crash, Citizens is next—and only—in the order of priority. As the insurer of Plaintiffs' personal vehicles, Defendant Citizens is the default insurer, under the order of priority in Michigan statute. Citizens is charged with providing Plaintiffs with PIP benefits, regardless of whether they are driving their personal vehicles at the time of the accident, unless one of three enumerated exceptions apply. *See* Mich. Comp. Laws Ann. § 500.3114(1) ("Except as provided in subsections (2), (3), and (5), a personal protection insurance policy [covering their personal vehicle] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident."). Interpreting the order of priority statute, the "rule [is] that when an exception to Subsection (1) should apply but insurance is not available, the general rule of Subsection (1) applies." *Titan Ins. Co. v. Am. Country Ins. Co.*, 312 Mich. App. 291, 300, 876 N.W.2d 853, 858 (2015).

Most closely analogous to the present scenario is the Michigan Court of Appeals' decision in *Auto–Owners Ins. Co. v. Lombardi Food Serv., Inc.*, 137 Mich. App. 695, 696–697, 358 N.W.2d 923 (1984). In *Auto-Owners* an employee was injured while riding in a truck that was owned or leased by his employer, and thus MCL 500.3114 (3) would have been applicable. However, the employer had failed to insure

14

the truck. *Id.* at 696, 358 N.W.2d 923. The Court held that the employee's personal insurer was liable under MCL 500.3114 Subsection (1). 137 Mich. App. at 697, 358 N.W.2d 923. Given this precedent and the court's holdings above, Defendant Citizens cannot rely on its place in the order of priority as the reason it should be awarded summary judgment, so its motion must be denied.[8]

## IV. CONCLUSION

Defendant ACE has shown the out-of-state trucking liability policy it issued did not include Michigan PIP coverage, so its motion for summary judgment is granted. Similarly, Defendant Great American has shown that the non-trucking insurance policy it issued for the Freightliner included a provision excluding PIP coverage while the truck was being used to haul a load, so this policy did not provide PIP coverage at the time of the 2019 accident. However, Defendant Citizens Insurance has failed to present a valid argument for why it, as the insurer of Plaintiffs' personal vehicles, cannot be required to provide PIP coverage. Consequently,

IT IS ORDERED that Defendant Great American's Motion for Summary Judgment (ECF No. 28) is GRANTED.

IT IS ORDERED that Defendant Citizen's Motion for Summary Judgment (ECF No. 39) is DENIED.

---

[8] Defendant Citizens' briefing also argues that "Plaintiffs were the owners of the Freightliner and were required to ensure that there was no fault coverage on the vehicle." (ECF No. 39, PageID.444.) But Defendant's motion fails to develop this assertion into a full-fledged argument, supported by law and fact, that would support a finding of summary judgment in its favor. The court will not develop this argument for Defendant, as the moving party it is Defendant Citizen's burden to make such a presentation. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

IT IS ORDERED that Defendant ACE's Motion for Summary Judgment (ECF No. 41) is GRANTED.

                                          s/Robert H. Cleland           /
                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE

Dated: February 1, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 1, 2022, by electronic and/or ordinary mail.

                                          s/Lisa Wagner              /
                                          Case Manager and Deputy Clerk
                                          (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-12134.ZELJKO.MSJ.AAB.2.RHC.docx